Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY 10022
Telephone: (212) 918-3000
*Attorneys for Defendants Monica Levinson,*
*Twentieth Century Fox Film Corporation,*
*One America Productions, Inc., Todd Schulman,*
*Sacha Baron Cohen, Larry Charles, Jay Roach*
*Everyman Pictures, Springland Films,*
*Dune Entertainment, LLC, Comedy Partners,*
*Dakota North Entertainment, Inc., and*
*Four by Two Production Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------------X

Kathie Martin,                                         :
                                                       :
                    Plaintiff,                         :
                                                       :
            – against –                                :     Case No. 08 CV 1828 (LAP)
                                                       :
Dan Mazer, Anthony Hines, Larry Charles,               :
Peter Baynham, Monica Levinson, Jay                    :
Roach, Todd Phillips, Everyman Pictures,               :
Twentieth Century Fox Film Corporation,                :
One America Productions, Inc., Gold/Miller             :
Productions, Springland Films, Dune                    :
Entertainment, LLC, MTV Networks d/b/a                 :
Comedy Central, Dakota North                           :
Entertainment, Inc., Four by Two                       :
Production Company, Sacha Baron Cohen,                 :
Todd Schulman, and John Does Nos. 1-5,                 :
                                                       :
                    Defendants.                        :

--------------------------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ii

Preliminary Statement ..............................................................................................................1

Factual Background ...................................................................................................................2

    A.    The Parties ..........................................................................................................2

    B.    Procedural History ..............................................................................................2

    C.    The Release .........................................................................................................5

    D.    The Film ..............................................................................................................5

ARGUMENT ...............................................................................................................................6

I.  THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT IN ITS
    ENTIRETY ...........................................................................................................................6

    A.    Motion To Dismiss Standard ..............................................................................7

    B.    Plaintiff's Claim For Fraudulent Inducement Must Fail
         Because She Cannot Demonstrate Reasonable Reliance On
         Defendants' Alleged Misrepresentations ...........................................................7

         1.    Plaintiff's Fraudulent Inducement Claim Must Fail
              Because The Alleged Misrepresentations Are
              Contradicted By The Face Of The Release ...........................................10

         2.    Plaintiff's Fraudulent Inducement Claim Must Also Fail
               Because Plaintiff Disclaimed Reliance On Statements
              About The Film ......................................................................................14

    C.    Plaintiff's Claim For Unjust Enrichment Must Fail Because It
         Is  Barred By The Release And Because It Is Preempted By
         Section 51 ...........................................................................................................15

    D.    Plaintiff's Intentional Infliction Claim Must Fail Because It Is
         Barred by The Release And It Fails On The Merits ...........................................18

CONCLUSION ...........................................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## Federal Cases

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n,*
   731 F.2d 112 (2d Cir. 1984).......................................................................................7

*Cerasani v. Sony Corp.,*
   991 F. Supp. 343 (S.D.N.Y. 1998)..............................................................................7

*Chambers v. Time Warner, Inc.,*
   282 F.3d 147 (2d Cir. 2002)........................................................................................6

*Computerized Radiological Servs. v. Syntex Corp.,*
   786 F.2d 72 (2d Cir. 1986)..........................................................................................9

*Doe v. One America Prods., Inc.,*
   SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007)……………………………….........13

*Ex Parte Cohen,*
   Case No. 1061288, 2008 WL 162598 (Ala. Jan. 18, 2008)........................................... *passim*

*Fonseca v. Columbia Gas Sys., Inc.,*
   37 F. Supp. 2d 214 (W.D.N.Y. 1998) .......................................................................14

*Hoffenberg v. Hoffman & Pollok,*
   248 F. Supp. 2d 303 (S.D.N.Y. 2003)........................................................................9

*Jackson v. Broadcast Music, Inc.,*
   No. 04 Civ. 5948 (TPG), 2006 WL 250524 (S.D.N.Y. Feb. 1, 2006), *aff'd,*
   No. 06 Civ. 2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007) ...................................10

*Johnston v. One America Prods., Inc.,*
   No. 2:07 CV 042-P-B, 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007) ......................13

*Lemerond v. Twentieth Century Fox Film Corp.,*
   No. 07 Civ. 4635 (LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) .............16, 17

*Levin v. McPhee,*
   917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd,*
   119 F.3d 189 (2d Cir. 1997).................................................................................18, 19

ii

*Myskina v. v. Conde Nast Publ'ns, Inc,*
   386 F. Supp. 2d 409 (S.D.N.Y. 2005)....................................................................15, 17

*Nunez v. A-T Fin. Info. Inc.,*
   957 F. Supp. 438 (S.D.N.Y. 1997)........................................................................18, 19

*Preston v. Martin Bregman Prods., Inc.,*
   765 F. Supp. 116 (S.D.N.Y. 1991)..............................................................................19

*Scala v. Sequor Group, Inc.,*
   No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995)..............9, 14

*Skylon Corp. v. Guilford Mills, Inc.,*
   864 F. Supp. 353 (S.D.N.Y. 1994)................................................................................9

*Washington Capital Ventures, LLC v. Dynamicsoft, Inc.,*
   373 F. Supp. 2d 360 (S.D.N.Y. 2005)........................................................................10

*Weil v. Johnson,*
   No. 119431/02, 2002 WL 31972157 (Sup. Ct. N.Y. Co. Sept. 27, 2002) ..................11, 12, 13

*Yurman Design Inc. v. Chaindom Enters., Inc.,*
   No. 99 Civ. 9307 (JFK), 2000 WL 897141 (S.D.N.Y. July 5, 2000) ........................7

*Zoll v. Jordache Enters., Inc.,*
   No. 01 Civ. 1339 (CSH), 2002 WL 31873461 (S.D.N.Y. Dec. 24, 2002) ...............16

*Zoll v. Ruder Finn, Inc.,*
   No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260
   (S.D.N.Y. Jan. 7, 2004).................................................................................................15

## State Cases

*Doe v. American Broad. Cos.,*
   152 A.D.2d 482, 543 N.Y.S.2d 455 (1st Dep't), *appeal dismissed,*
   74 N.Y.2d 945, 550 N.Y.S.2d 278 (1989) ...............................................................19

*Freedman v. Pearlman,*
   271 A.D.2d 301, 706 N.Y.S.2d 405 (1st Dep't 2000) ..............................................16

*Hampton v. Guare,*
   195 A.D.2d 366, 600 N.Y.S.2d 57 (1st Dep't 1993) ................................................15

*Howell v. New York Post Co.,*
   81 N.Y.2d 115, 596 N.Y.S.2d 350 (1993) ...........................................................18, 19

iii

*Komorov v. Advance Magazine Pubs., Inc.*,
     180 Misc. 2d 658, 691 N.Y.S.2d 298 (Sup. Ct., N.Y. Co. 1999) ...........................................19

*Morby v. Di Siena Assocs. LPA*,
     291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002) .......................................................10, 11

*Shklovskiy v. Khan*,
     273 A.D.2d 371, 709 N.Y.S.2d 208 (2d Dep't 2000) .............................................................8

*Touloumis v. Chalem*,
     156 A.D.2d 230, 548 N.Y.S.2d 493 (1st Dep't 1989) .......................................................9, 10

## **Federal Statutes/Rules**

Fed. R. Civ. P. 9(b) ...........................................................................................................................9

Fed. R. Civ. P. 12(b)(6)......................................................................................................................1

Fed. R. Civ. P. 56 ...............................................................................................................................1

## **State Statutes**

New York Civil Rights Law § 51 ..........................................................................................15, 16, 17

Defendants Monica Levinson ("Levinson"), Twentieth Century Fox Film Corporation ("Fox"), One America Productions, Inc. ("One America"), Todd Schulman ("Schulman"), Sacha Baron Cohen ("Cohen"), Larry Charles ("Charles"), Jay Roach ("Roach"), Everyman Pictures ("Everyman"), Springland Films ("Springland"), Dune Entertainment LLC ("Dune"), Comedy Partners (incorrectly sued herein as "MTV Networks d/b/a Comedy Central"), Dakota North Entertainment, Inc. ("Dakota"), and Four by Two Production Company ("Four by Two") (collectively, "Defendants"), by their undersigned attorneys, respectfully submit this memorandum of law in support of their motion to dismiss the First Amended Complaint (the "Complaint") of plaintiff Kathie Martin ("Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## **Preliminary Statement**

Plaintiff operates a business that provides lessons on etiquette and manners to persons who would like to improve their social graces. She voluntarily agreed to be filmed providing such a lesson and was paid for her appearance in the film *Borat – Cultural Learnings of America for Make Benefit Glorious Nation of Kazakhstan* (the "Film"). Most significant for this motion, before appearing in the Film, Martin voluntarily signed a written consent and release for her appearance in the Film, which accurately describes the Film as a documentary-style motion picture. The release specifically states that by signing that release, she has waived any claims of any sort which might arise from the use of her appearance in the Film. Now, contrary to her agreements in the release, she has sued the producer of the motion picture and several persons

---

[1]    The facts necessary for the determination of this motion are set forth in the accompanying declarations of Joan Hansen ("Hansen Decl."), sworn to on the 2nd day of May, 2008, and of Slade R. Metcalf, ("Metcalf Decl."), sworn to on the 5th day of May, 2008, and the exhibits annexed thereto. The facts set forth in these declarations will not transform this Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. *See* footnote 4, *infra*.

1

and entities, directly or indirectly associated in the Film. In short, her voluntary act in signing the release (for which she was paid) fully bars all of her asserted claims here.

## Factual Background

### A.    The Parties

Plaintiff Katie Martin is, according to her Complaint, a resident of the State of Alabama. Complaint ¶ 3. Metcalf Decl., Exhibit ("Ex.") C.

Defendant Fox distributed the Film, which was produced by defendant One America. Hansen Decl. ¶¶ 6, 7. Defendant Springland is a registered d/b/a of One America. *Id.* ¶ 8. Defendant Everyman is the "loan-out" corporation for defendant Jay Roach, who is one of the producers of the Film. *Id.* ¶ 9. Defendant Levinson is an executive producer of the Film. *Id.* ¶ 10. Defendant Schulman was employed by One America as a field coordinator for the Film. *Id.* ¶ 11. Defendant Charles is the director of the Film. *Id.* ¶ 12. Defendant Cohen is an actor who plays the character Boart in the Film and is a producer and writer of the Film. Hansen Decl. ¶ 13. Defendant Four by Two is a company name Cohen used to take his production credit in the Film, but it was not in any way involved in the production or distribution of the Film or the DVD release of the Film. *Id.* Defendant Dune was a passive investor in the Film. *Id.* ¶ 14.

Defendants Comedy Partners and Dakota were not in any way involved in the production or distribution of the Film or the DVD release of the Film. *Id.* ¶ 14. The only possible connection that these entities have to the Film involves a television show produced by Dakota, which aired on Comedy Central, which included a behind the scenes view of the Film. *Id.*

### B.    Procedural History

On December 22, 2006, Plaintiff filed a complaint against Defendants in the Jefferson Circuit Court in Alabama "alleging fraud, deceit, quasi contract and unjust enrichment, commercial misappropriation, and invasion of privacy, and intentional infliction of emotional

2

distress." *Ex parte Cohen*, Case No. 1061288, 2008 WL 162598, at *1, *3 (Ala. Jan. 18, 2008).[2]

The Alabama Defendants moved to dismiss the action based on the forum-selection clause in a release Plaintiff entered into with Springland (the "Release"). *Id.* at *1. Plaintiff opposed the motion, arguing that pursuant to Alabama's "door-closing" statute the Release was not enforceable in Alabama because the purpose of the Release was to engage in intrastate – not interstate – commerce and Springland was not qualified to do business in Alabama. *Id.* at *1, *5. The trial court adopted Plaintiff's argument and denied the Alabama Defendants' motion to dismiss. *Id.* at *1. The Alabama Defendants subsequently sought mandamus relief from the Supreme Court of Alabama. *Id.* And, on January 18, 2008, the Supreme Court of Alabama reversed the lower court's decision and held that the Plaintiff was bound by the plain language of the Release and thus, at least as to the forum-selection clause, the Release was enforceable. The trial court subsequently dismissed the complaint. Hansen Decl., Ex. A.

Apparently concerned that the Alabama courts might dismiss her case and that the New York statute of limitations would expire, Plaintiff, on October 22, 2007, filed a summons with notice in the Supreme Court of the State of New York, County of New York. Metcalf Decl. ¶ 2. On February 22, 2008, Fox, One America, Levinson and Schulman, the only Defendants then served in this action, removed the action to this Court. *Id.* ¶ 3. Subsequently, counsel for Defendants accepted service on behalf of Defendants Cohen, Charles, Roach, Everyman, Springland, Dune, MTV d/b/a Comedy Central, Dakota and Four by Two. *Id.* ¶ 4.

On March 28, 2008, Plaintiff filed a complaint in this action (the "Original Complaint"), which annexed a copy of the Release as Exhibit A. Metcalf Decl. ¶ 5. (A true and correct copy

---

[2]    Cohen, Fox, One America, Springland, Everyman, Dune, MTV, Comedy Central, Dakota and Four by Two (collectively "Alabama Defendants") were the only Defendants served in the Alabama action.

of the Original Complaint is annexed as Exhibit A to the Metcalf Decl.; for the convenience of the Court, a true and correct copy of the Release, as annexed to Original Complaint, is annexed as Exhibit B to the Metcalf Declaration).[3] On April 11, 2008, Plaintiff filed the Complaint. *Id.* ¶6.

The Complaint stems from Plaintiff's alleged inducement to appear in the Film and her subsequent appearance in the Film. *See generally* Complaint. Plaintiff, the owner of an etiquette training business, alleges in the Complaint that she was asked to appear in a "documentary" that Springland was making about a "Foreign Reporter's travels and experiences in the United States," which would be shown on "Belarus Television." *Id.* ¶¶ 1, 26, 29, 30. Plaintiff agreed to be filmed teaching a foreign reporter dining etiquette on October 24, 2005 at the Tutwiler Hotel in Birmingham, Alabama. *See id.* ¶¶ 30-39. Plaintiff alleges that on that date, she was paid $350 and asked to sign a standard filming release. *Id.* ¶ 39-40. Plaintiff further alleges that she signed the Release based on "Schulman's previous representations concerning, among other things, his identity as 'Todd Lewis', the Foreign Reporter, the nature of the Class and filming and the intended audience." Complaint ¶ 39. Plaintiff claims that she "would never have signed the [Release] if she had been told the truth about the [Film] by Defendants." *Id.* ¶ 74. In particular, Plaintiff alleges that she was particularly offended because the foreign reporter showed her nude photos and the Film received an "R" rating. *Id.* ¶¶ 19, 48, 54, 70.

As a result of Plaintiff's involvement in the Film and advertising and promotion for the Film, Plaintiff asserts four claims in her Complaint: (1) fraudulent inducement, (2) quasi contract/unjust enrichment; (3) intentional infliction of emotional distress; and (4) rescission.

---

[3]     While Plaintiff only annexed a copy of the Release to the Original Complaint, and not to the Complaint, it appears she intended to attach the Release to the Complaint as well because she references the Release and an "Exhibit A" in the Complaint. *See* Complaint ¶ 39 ("Schulman handed Mrs. Martin a Standard Consent Agreement … Mrs. Martin signed the form and requested a copy. *See* Exhibit A.").

\\\NY - 027721/000006 - 1082581 v1

C.    **The Release**

On October 24, 2005, Plaintiff and Springland entered into the six-paragraph Release.  In the Release, Plaintiff acknowledged that "in entering into [the Release, Plaintiff] is not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film."  Release ¶ 5.  Further, Plaintiff agreed:

> [N]ot to bring any time in the future, any claims against [Springland], or against any of its assignees or licensees or anyone associated with the Film, that include assertions of (a) infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the [Plaintiff's] name or likeness of image, ... (d) intrusion (such as any allegedly offensive behavior or questioning or any invasion of privacy), (e) false light (such as any allegedly false or misleading portrayal of [Plaintiff], (f) infliction of emotional distress (whether allegedly intentional or negligent) ... (h) breach of any alleged contract (whether the alleged contract is verbal or in writing), (i) allegedly deceptive business or trade practices, ... (m) prima facie tort (such as alleged intentional harm to [Plaintiff]), (n) fraud (such as any alleged deception or surprise about the Film or this consent agreement) ... (p) ... or any claim arising out of the [Plaintiff's] viewing of any sexually-oriented materials or activities.

*Id.* ¶ 4.  In addition, the Release states that Springland "shall be exclusively entitled to use, or to assign or license others the right to use, the Film and any recorded material that includes the [Plaintiff] without restriction in any media throughout the universe in perpetuity ..." and Plaintiff "agrees to allow the Producer, and any of its assignees or licensees, to use [Plaintiff's] contribution, photograph, film footage, and biographical material in connection not only with the Film, but also in any advertising, marketing or publicity for the Film...."  *Id.* ¶ 2.

D.    **The Film**

The Film was first released in theaters in the United States on or about November 3, 2006, and was released on DVD in the United States on March 6, 2007.  Hansen Decl. ¶ 6.  (A true and correct copy of the Film on DVD is annexed as Exhibit A to the Hansen Decl.) [4]  The

---

[4]    The submission of the Film on DVD does not convert this motion to dismiss to one for summary judgment because the Film is integral to Plaintiff's Complaint.  Indeed, Plaintiff

documentary-style Film tells the story of Borat, a fictional Kazakh TV personality dispatched to the United States by the Kazakhstan Ministry of Information to report on the American people. Comedian and actor Cohen created and plays Borat.  *Id*.

In the Film, Borat travels across America with his friend and producer, Azamat Bagatov. *Id*.  During this transcontinental journey, Borat encounters a homophobic rodeo owner, kindly Jewish inn keepers, drunken fraternity boys and various other individuals.  *Id.*  Cohen employs antics ranging from fish-out-of-water buffoonery, to eccentric and prejudicial commentary, to evoke reactions from the Americans Borat encounters.  *See id.*  In keeping with this theme, Plaintiff is depicted in one scene attempting to teach Borat how to "dine like gentleman" for a dinner party he has planned with "high society" in Alabama (the "Sequence").  (A true and correct copy of the Film Sequence on DVD is annexed as Exhibit C to the Hansen Decl.)

## **ARGUMENT**

## **THIS COURT SHOULD DISMISS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY**

This Court should dismiss Plaintiff's Complaint because Plaintiff is bound by the Release, which bars all of her claims.  Further, even if she were not bound by the Release, her claims for quasi contract/unjust enrichment and intentional infliction of emotional distress would fail independently on the merits.

---

relies entirely on the Film in order to bring this action – basing all of her claims on her alleged inducement to appear in the Film and her subsequent appearance therein.  *See* Complaint *generally.  See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002) ("For purposes of [a motion to dismiss], the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference. … Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document 'integral' to the complaint.") (internal quotations and citations omitted).

A.     **Motion To Dismiss Standard**

When evaluating a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim, a court "must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Cerasani v. Sony Corp.*, 991 F. Supp. 343, 350, 357 (S.D.N.Y. 1998).  To survive a motion to dismiss, "the complaint must contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *Yurman Design Inc. v. Chaindom Enters., Inc.*, No. 99 Civ. 9307 (JFK), 2000 WL 897141, at *4 (S.D.N.Y. July 5, 2000).

B.     **Plaintiff's Claim For Fraudulent Inducement Must Fail Because She Cannot Demonstrate Reasonable Reliance On Defendants' Alleged Misrepresentations**

This Court should dismiss Plaintiff's fraudulent inducement claim because it is barred by the Release.[5]  As a preliminary matter, the Supreme Court of Alabama has already determined that – regardless of her allegations of fraud – Plaintiff is bound by the clear and plain language of the Release.  *Ex parte Cohen*, 1061288, 2008 WL 162598, at *1, *7 (Ala. Jan. 18, 2008). Specifically, in rejecting Plaintiff's argument that the Release related only to intrastate commerce, the Court cited the content of the Release itself, holding that:

> *The plain language of the* [Release] makes clear that the transaction between Martin and Springland Films was not, as Martin attempts to portray it, a simple exchange pursuant to which Martin was to provide one filmed etiquette lesson in return for $350. Indeed, … pursuant to the terms of the [Release], Martin was given the $350 payment "and the opportunity for [Martin] to appear in a motion

---

[5]     Plaintiff asserts one claim for fraudulent inducement for damages (claim one) and another claim for rescission (claim four), which are both based on the same allegedly fraudulent misrepresentations.  *Cf.* Complaint ¶¶ 76, 101.  These claims, however, are not different causes of action; they simply seek different remedies for the same cause of action: fraud. *See Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank, Nat'l Ass'n*, 731 F.2d 112, 123 (2d Cir. 1984) (stating that fraud "serves as a basis for an action for money damages or for rescission of a release") (internal quotations and citations omitted).  Accordingly, Defendants address Plaintiff's fraudulent inducement and rescission "claims" as one cause of action.

picture" in exchange for her agreement, among other things, "to be filmed and audiotaped by [Springland Films] for a documentary-style film" and to assign to Springland Films any rights she may have in the recorded material so as to allow Springland Films to use the material "without restriction in any media throughout the universe in perpetuity."

Thus, although Martin has characterized the primary purpose of the transaction as "the provision of local labor by Mrs. Martin" … , which, under Alabama caselaw, would clearly be an intrastate activity, ... the transaction here clearly encompassed more than Martin's providing labor. The *plain language of the [Release]* indicates that any provision of services by Martin was incidental to the actual purpose of the transaction-to provide *for Martin's appearance in recorded footage that might be used "without restriction in any media throughout the universe."* Accordingly, we hold that the primary purpose of the transaction between Martin and Springland Films constituted an interstate activity.

*Id.*, at *5 (emphasis added). As such, the court held, the forum selection clause goverened the dispute between the parties. *Id.* at *1. In so holding, the Alabama Supreme Court, rather than simply addressing the question of intra versus interstate commerce, expressly reached the enforceability of at least a portion of the Release – and held that Plaintiff was bound by its plain language. Indeed, the concurring judge, Justice Murdock, went out of his way to remark that the court's limited holding did "not prevent the [Defendants] from using provisions of their contract with [plaintiff] to defend against the lawsuit she initiated." *Id*. at *7. Accordingly, the enforceability of at least part of the Release – even given Plaintiff's allegations of fraud – has already been affirmed.

Nevertheless, Plaintiff seeks to avoid the preclusive effect of the Release in this action. This Court should not allow her to do so. Under New York law which governs the Release (Release ¶ 6), releases are considered to be contracts, and therefore are interpreted according to principles of contract law. *Shklovskiy v. Khan*, 273 A.D.2d 371, 372, 709 N.Y.S.2d 208, 209 (2d Dep't 2000). New York courts consider releases to be a serious and necessary part of our judicial system: "A release may not be treated lightly. It is a jural act of high significance without which the settlement of disputes would be rendered all but impossible." *Touloumis v.*

*Chalem*, 156 A.D.2d 230, 231, 548 N.Y.S.2d 493, 494 (1st Dep't 1989) (internal quotation omitted).

> It is well established in New York that a valid release which is clear and unambiguous on its face and which is knowingly and voluntarily entered into will be enforced as a private agreement between parties. Thus, a release will be binding on the parties absent a showing of fraud, duress, undue influence, or some other valid legal defense. Moreover, in the absence of a fiduciary relationship, a party seeking to avoid an otherwise valid release has the burden of proving vitiating circumstances.

*Skylon Corp. v. Guilford Mills, Inc.*, 864 F. Supp. 353, 358 (S.D.N.Y. 1994) (Preska, J.) (internal quotations and citations omitted).

In order to avoid the conclusive effect of a release due to allegations of fraudulent inducement, a party must prove: "(1) that the defendant made a representation, (2) as to a material fact, (3) which was false, (4) and known to be false by the defendant, (5) that the representation was made for the purpose of inducing the other party to rely upon it, (6) that the other party rightfully did so rely, (7) in ignorance of its falsity (8) to his injury." *Hoffenberg v. Hoffman & Pollok*, 248 F. Supp. 2d 303, 310 (S.D.N.Y. 2003). Fraud must be proved by clear and convincing evidence. *Computerized Radiological Servs. v. Syntex Corp.*, 786 F.2d 72, 76 (2d Cir. 1986). Further, under Fed. R. Civ. P. 9(b), a party pleading fraud must allege "the circumstances constituting fraud or mistake ... with particularity." Fed. R. Civ. P. 9(b). As such, to meet this standard, a plaintiff must "adequately specify the statements he claims were false or misleading, give particulars as to the respect in which he contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements." *Scala v. Sequor Group, Inc.,* No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *3 (S.D.N.Y. Apr. 14, 1995) (Preska, J.).

\\\NY - 027721/000006 - 1082581 v1

1.     Plaintiff's Fraudulent Inducement Claim Must Fail Because The Alleged
       <u>Misrepresentations Are Contradicted By The Face Of The Release</u>

Here, this Court should dismiss Plaintiff's fraudulent inducement claim because Plaintiff cannot establish reasonable reliance on any alleged misrepresentations.  "Reasonable reliance is an essential element of a claim of fraud." *Jackson v. Broadcast Music, Inc.,* No. 04 Civ. 5948 (TPG), 2006 WL 250524, at *9 (S.D.N.Y. Feb. 1, 2006), *aff'd,* No. 06 Civ. 2283, 2007 WL 2914516 (2d Cir. Oct. 5, 2007).  And, "[r]easonable reliance cannot be adequately pleaded where a party has the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means." *Id.* (dismissing fraudulent inducement claim because the one-page agreement at issue was clear that Plaintiff was releasing his rights to his music, so "Plaintiff could not reasonably have relied on any alleged misrepresentation to the contrary").  For example, "[a] plaintiff's ability to establish reasonable reliance is irreparably impaired when [she] simply fails to read a binding document prior to executing the document." *Washington Capital Ventures, LLC v. Dynamicsoft, Inc.*, 373 F. Supp. 2d 360, 365 (S.D.N.Y. 2005) (even assuming the defendants made fraudulent misrepresentations, dismissing fraud claim because plaintiffs failed to read the contract at issue).  New York courts reason that, because a party must be actively engaged in contracting and cannot merely blindly rely on another's representations, "[a] party is under an obligation to read a document before he or she signs it, and one cannot generally avoid the effect of a release upon the ground that he or she did not read it or know its contents." *Touloumis*, 156 A.D.2d at 232-33, 548 N.Y.S.2d at 495 (plaintiff could not establish reasonable reliance because "[t]here is no allegation that plaintiff did not, or could not, read the plain language of the release").

For example, in *Morby v. Di Siena Assocs. LPA,* 291 A.D.2d 604, 737 N.Y.S.2d 678 (3d Dep't 2002), the plaintiff sought damages stemming from an injury he sustained while doing

work for the defendants.  The plaintiff, however, had signed a personal injury release – without reading it – because allegedly the defendants fraudulently claimed the release was merely a "labor and materials release."  *Id.* 291 A.D.2d at 604-605, 737 N.Y.S.2d at 679-680.  The court held that the plaintiff's complaint must be dismissed because:

> [E]ven accepting as true plaintiff's allegations concerning the misrepresentations ... a reading of the simple, straightforward document would have readily advised him that he was indeed discharging all claims against defendants for 'personal injury' ...  Having failed to read the release before signing it, plaintiff simply cannot establish the essential element of justifiable reliance....  Plaintiff cannot now avoid his obligations under a release he did not read merely by asserting that he 'thought' it was something else.

*Id.* 291 A.D.2d at 605-06, 737 N.Y.S.2d at 680.

Here, Plaintiff should have certainly understood that by signing the Release she was agreeing to waive her right to bring all of the claims she has now asserted against Defendants.  As such, even if Plaintiff's allegations regarding Defendants' misrepresentations were true (and for the purposes of this motion we must assume they are), she cannot avoid her obligations under the Release by claiming she thought the Film was something other than what it turned out to be.

Indeed, this case is just like *Weil v. Johnson*, No. 119431/02, 2002 WL 31972157, at *1 (Sup. Ct. N.Y. Co. Sept. 27, 2002).  At issue in *Weil* was a film entitled "Born Rich," a documentary about the lives of children who grew up very wealthy.  *Id.* at *1.  The plaintiff, Luke Weil—heir to the Autotote gaming empire—was one of eleven individuals profiled in the documentary, which was made by Jamie Johnson, an heir to the Johnson & Johnson fortune.  *Id.* at *1.  Before participating in the interview for the film, Weil signed three separate release forms.  The releases, which appeared under the letterhead of "Black River Films, Inc." along with a Beverly Hills address, contained a general release for the filmmakers to use any footage of the interview in any manner they wished in connection with the film.  The release also stated, "I am granting these rights in exchange for good and valuable consideration, receipt of which is hereby

acknowledged. I hereby waive any right to injunctive or other equitable relief in connection with the development production, distribution or other exploitation of the Picture." *Id.* at *1-2.

After Johnson completed the documentary, and it was set to be released, Weil sued seeking a declaration that the releases were nullities because they were fraudulently obtained and for an injunction preventing the release of the film. Weil alleged that when Johnson solicited his participation, Johnson "assured Weil that 'the singular purpose and expected utilization of the interview was solely for non-commercial purposes and merely in furtherance of a *school project*.'" *Id.* at *2 (emphasis added). Despite Weil's arguments, the court rejected his claim of fraud noting, "Weil's allegations are contradicted by the very face of the Release, *which clearly alerted him to the fact that the enterprise was not a 'student project,'* but rather was a commercial production being undertaken by a professional studio based in Beverly Hills, California." *Id.* (emphasis added). Furthermore, the court noted that it is well settled that "a plaintiff may not avoid his obligations under a clearly worded release on the ground that the defendant falsely misrepresented the true significance of the document to him in order to secure his signature." *Weil,* 2002 WL 31972157, at *2. As such, the court concluded that the releases "signed by plaintiff appear valid and binding on their face." *Id.* at *3.

Similarly, here, Plaintiff alleges that, by signing the Release, she was relying on Schulman's representations that the Film was a "documentary to be shown on Belarus Television." Complaint ¶ 76; *see also id.* ¶ 79 ("Defendants defrauded Mrs. Martin into signing [the Release] based on the representations that a 'foreign reporter' was filming a documentary for Belarus Television …"). But, these claims are contradicted by the clear terms of the Release itself. First, the Release *never* states that the Film is a "documentary." Instead, the first paragraph of the Release states that the document is an agreement for the participant to be paid

12

money in exchange for the "opportunity for the Participant to appear in a *motion picture*...." Release at p. 1 (emphasis added). The Release also fleshes out the nature of the project by stating, "The Participant agrees to be filmed and audiotaped by the Producer for a *documentary-style film*."[6] *Id.* ¶ 1 (emphasis added). That paragraph specifically states that "It is understood that the *Producer hopes to reach a young adult audience by using entertaining content and formats.*" *Id.* (emphasis added). Further, the Release clearly states that Plaintiff will not bring any claims based on any "offensive behavior or questioning" or "*any claim arising out of [Plaintiff's] viewing of any sexually-oriented materials or activities." Id.* ¶ 4(d), 4(p). As a result, the Release here clearly stated the Film was not merely a documentary about a foreign reporter's travels to America, but rather an entertaining documentary-*style* motion picture aimed at young adults that may involve "offensive behavior" and "sexually-oriented materials or activities." Moreover, the Release *never* states that the Film will only be shown – or indeed, shown at all – on Belarus Television. To the contrary, as the Supreme Court of Alabama already recognized, the Release plainly states that Plaintiff agreed "to be filmed and audiotaped by [Springland Films]" and to assign to Springland Films any rights she may have in the recorded material so as to allow Springland Films to use the material "without restriction in any media

---

[6]     Plaintiff alleges that the Film is not a "'documentary-style' movie." Complaint ¶ 61. This is incorrect. Indeed, two courts have already concluded that the Film is a documentary-style film. *See Doe v. One America Prods., Inc.*, SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) (the Film is a "part documentary" which "utilizes the reactions and statements of people … to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like.") (A true and correct copy of this decision is annexed as Exhibit A hereto); *Johnston v. One America Prods., Inc.*, No. 2:07 CV 042-P-B, 2007 WL 2903218, at *5 (N.D. Miss. Oct. 2, 2007) (the Film "is not simply an ordinary, expressive, fictional work with fictional actors. Nor is it a pure documentary. Rather, the film is a unique mixture of documentary and fiction which blurs the boundaries of both genres …."). Moreover, the Film was nominated for the Best *Non-Fiction* Award by the New York Film Critics Circle. *See* http://movies.nytimes.com/movie/346334/Borat-Cultural-Learnings-of-America-for-Make-Benefit-Glorious-Nation-of-Kazakhstan/awards (last visited Apr. 24, 2008).

13

throughout the universe in perpetuity." *Ex parte Cohen,* 2008 WL 162598, at *5.  As a result, the Release accurately described the Film.  Therefore, it is immaterial that the Complaint alleges that Plaintiff was told that the Film was a documentary for Belarus Television – Plaintiff cannot now disregard the clear provisions in the Release that she admits she signed.  Therefore, her fraudulent inducement claim must fail.

2.    Plaintiff's Fraudulent Inducement Claim Must Also Fail
       Because Plaintiff Disclaimed Reliance On Statements About The Film

This Court should also dismiss Plaintiff's fraudulent inducement claim because the Release clearly states that Plaintiff was not relying on any representations about the nature of the Film.  When a release "expressly states that the releasor disclaims the existence of or reliance upon specified representations, that party will not be allowed to claim that he was defrauded into entering the contract in reliance on those representations."  *Fonseca v. Columbia Gas Sys., Inc.,* 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998).  *See also Scala,* 1995 WL 225625, at *6 (holding that plaintiff "is barred from pursuing his claim that he was defrauded into signing his contracts ... [because plaintiff] disclaimed reliance upon any representations").

Here, the Release Plaintiff admittedly signed clearly states that Plaintiff "acknowledges that in entering into [the Release, Plaintiff], is not relying upon any promises or statements made by anyone about the *nature of the Film* or *the identity of any other Participants or persons involved in the Film*."    Release ¶ 5 (emphasis added).  Further, the Release also states that Plaintiff waived her right to bring *any* fraud claims against the Defendants "such as any alleged deception or surprise about the Film or this consent agreement."  *Id.* ¶ 4.  Accordingly, Plaintiff has disclaimed reliance on the very representations she now cites to make her claim.  *See* Complaint ¶ 79.  Therefore, Plaintiff's fraudulent inducement claim should be dismissed.

14

**C.    Plaintiff's Claim For Unjust Enrichment Must Fail Because It Is
Barred By The Release And Because It Is Preempted By Section 51**

Next, this Court should dismiss Plaintiff's second cause of action for quasi contract/unjust enrichment.  First, Plaintiff specifically released her right to bring *any* claims that include assertions of "infringement of rights of publicity or misappropriation (such as any allegedly improper or unauthorized use of the [Plaintiff's] name or likeness of image," or breach of contract or allegedly deceptive business or trade practices.  Release ¶¶ 4(a), (h), 4(i).  Hence, Plaintiff has released her quasi contract/unjust enrichment claim.

Second, even if Plaintiff had not released this claim, it should still be dismissed because no cause of action for quantum meruit/unjust enrichment for the use of a plaintiff's likeness exists under New York law – it is preempted by New York Civil Rights Law § 51 ("Section 51").  As one court explained:

> The New York Civil Rights law preempts all common law claims based on unauthorized use of name, image, or personality….  The Civil Rights Law does not simply cover or define common law claims, it provides an exclusive remedy for cases such as the one at bar.  That is to say *there is no cause of action for unjust enrichment arising from the alleged unauthorized use of personal image*.

*Zoll v. Ruder Finn, Inc.,* No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004) (emphasis added) (dismissing unjust enrichment claim based on the alleged unauthorized use of plaintiff's image in two videotapes).  *See also  Myskina v. v. Conde Nast Publ'ns, Inc,* 386 F. Supp. 2d 409, 420 (S.D.N.Y. 2005) ("[u]nder New York law, common law unjust enrichment claims for unauthorized use of an image or likeness are subsumed by Sections 50 and 51" and must be dismissed); *Hampton v. Guare*, 195 A.D.2d 366, 366-67, 600 N.Y.S.2d 57, 58-59 (1st Dep't 1993) (common law claims barred because "plaintiff has no property interest in his image, portrait or personality outside the protections granted by the Civil Rights Law").  Indeed, even where a plaintiff uses creative pleading in an attempt to save a

15

common law claim from the preemptive effect of Section 51, "New York courts have refused to recognize [these] efforts to present statutory privacy claims as common law claims where the claim is based on alleged unauthorized use of a plaintiff's image or likeness and have refused to exalt form over substance when a plaintiff attempts to do so." *Zoll v. Jordache Enters., Inc.,* No. 01 Civ. 1339 (CSH), 2002 WL 31873461, at *16 (S.D.N.Y. Dec. 24, 2002) (dismissing trespass and unjust enrichment claims because they are "in substance, based on the unauthorized use of [plaintiff's] image for commercial purposes"); *See also Lemerond v. Twentieth Century Fox Film Corp.,* No. 07 Civ. 4635 (LAP), 2008 WL 918579, at *3 (S.D.N.Y. Mar. 31, 2008) (dismissing quantum meruit claim because "common law claims related to unauthorized use of a person's image or likeness are subsumed under §§ 50 and 51").

Here, Plaintiff's quantum meruit/unjust enrichment claim is expressly based on Defendants' use of her image in the Film.  Complaint ¶¶ 87-88 ("with respect to Mrs. Martin, Defendants conspired to exploit and defraud her into participating in the *Borat* movie" and "Defendants unjustly received the benefits of avoiding the costs of hiring a cast of professional actors and actresses by preying on unknowing individuals like Mrs. Martin.").[7]  As such, it is preempted by Section 51 and should be dismissed.

Further, even if Plaintiff had asserted a Section 51 claim, such a claim would be

---

[7]    To the extent Plaintiff attempts to argue that her quantum meruit claim is not based on her appearance in the Film, but rather on her "services" as an etiquette coach, her claim must fail.  First, Plaintiff waived her right to bring this type of claim.  See Release ¶ 4(h) (waiver of claims based on alleged breach of contract), 4(i) (waiver of claims based on "alleged deceptive business or trade practices").  Second, Defendants paid Plaintiff $350 for her services as an etiquette coach and her appearance in the Film.  As such, while Plaintiff may wish that she had received more money, there has been accord and satisfaction and she cannot maintain a quantum meruit claim. *See Freedman v. Pearlman,* 271 A.D.2d 301, 304, 706 N.Y.S.2d 405, 408 (1st Dep't 2000) (dismissing quantum meruit claim because plaintiff was paid for his employment services and his "allegation that he performed services far greater than defendants deserved for the compensation he actually received are not sufficient to state a cause of action in quantum meruit").

unsuccessful. First, it is axiomatic that a signed written release consenting to the use of the Plaintiff's likeness bars a Section 51 claim. *See Myskina*, 386 F. Supp. 2d at 414-15. As discussed above, there is a valid Release here, which bars Plaintiff's claim. *See also* Release ¶ 4(a). Second, this Court has already dismissed a similar case brought by another participant in the Film on the grounds that his Section 51 claim was barred as a matter of law. In *Lemerond*, this Court held that "it is beyond doubt that *Borat* fits squarely within the newsworthiness exception to [Section 51]." 2008 WL 918579, at *3 Specifically, this Court held that the Film is newsworthy because it

> attempts an ironic commentary of 'modern' American culture, contrasting the backwardness of its protagonist with the social ills afflict supposedly sophisticated society. The movie challenges its viewers to confront, not only the bizarre and offensive Borat character himself, but the equally bizarre and offensive reactions he elicits from "average" Americans. … Such clearly falls within the wide scope of what New York courts have held to be a matter of public interest.

*Id.* Further, the Court noted that the Film participant's appearance in the Film bore a "direct relationship to the theme of 'otherness' described above" because the scene "emphasizes the differences between Borat's home village and his American destination." *Id.* Similarly here, Plaintiff's appearance in the Film, like Lemerond's appearance*,* bears a real relationship to the Film's theme of depicting the culture clash between everyday Americans and Borat. Indeed, in the Film, Plaintiff is accurately portrayed reacting to Borat's antics and – patiently – attempting to teach him how "to dine like [an American] gentleman." *See* Hansen Decl., Ex. C. Plaintiff's interaction with Borat emphasizes just how "foreign" he is to the American people. As such, as in *Lemerond,* Borat's interaction with Plaintiff undoubtedly bears a real relationship to the larger point made in the Film – the contrast between Borat's "backwardness" with the "supposedly sophisticated [American] society." *Lemerond,* 2008 WL 918579, at *3. Accordingly, any Section 51 claim would similarly fail on the merits.

**D.**    **Plaintiff's Intentional Infliction Claim Must Fail Because It Is
Barred by The Release And It Fails On The Merits**

Finally, this Court should dismiss Plaintiff's third cause of action for intentional infliction of emotional distress.  First, the claim is specifically barred by the Release, which waives Plaintiff's right to bring any claims for "infliction of emotional distress (whether allegedly intentional or negligent)."  Release ¶ 4(f).  Second, Plaintiff cannot make out the elements of an intentional infliction of emotional distress claim.  The elements are:  "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe emotion distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress."  *Howell v. New York Post Co.,* 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 353 (1993).

As this Court has recognized, New York "[c]ourts have relied on the outrageousness element to set reasonable bounds on this potentially limitless tort and have required that the plaintiff allege conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Nunez v. A-T Fin. Info. Inc.*, 957 F. Supp. 438, 442 (S.D.N.Y. 1997) (Preska, J.) (internal quotation omitted).  "Moreover, the Second Circuit has interpreted New York law as requiring that the conduct which allegedly caused the emotional distress be intentionally directed at the plaintiff without any reasonable justification …."  *Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996), *aff'd,* 119 F.3d 189 (2d Cir. 1997).  Indeed, for the claims that do survive a motion to dismiss, "New York courts appear to require that plaintiffs allege either an unrelenting campaign of day in, day out harassment or that the harassment was accompanied by physical threats …."  *Nunez,* 957 F. Supp. at 442.

Under this standard, courts routinely hold that the publication of plaintiff's image without their consent (or the publication false and defamatory or private, personal – even humiliating –

facts) does not amount to extreme and outrageous conduct. *See Preston v. Martin Bregman Prods., Inc.,* 765 F. Supp. 116, 120 (S.D.N.Y. 1991) ("Merely publicizing private, personal facts does not amount to such a claim" and holding that the use of plaintiff's image in a movie without her consent does not constitute extreme and outrageous conduct); *Doe v. American Broad. Cos.,* 152 A.D.2d 482, 483, 543 N.Y.S.2d 455 (1st Dep't) (breaking promise to disguise rape victims' identities in broadcast with result that victims voices and faces were recognizable does not constitute outrageous conduct), *appeal dismissed,* 74 N.Y.2d 945, 550 N.Y.S.2d 278, 549 N.E.2d 480 (1989); *Levin*, 917 F. Supp. at 242-43 (publication of a single, allegedly false or defamatory article about a plaintiff does not constitute extreme and outrageous conduct as a matter of law); *Komorov v. Advance Magazine Pubs., Inc.*, 180 Misc. 2d 658, 661-63, 691 N.Y.S.2d 298, 302 (Sup. Ct., N.Y. Co. 1999) (alleged false identification of plaintiff as a money launderer and extortionist for the Russian mob does not constitute outrageous conduct).

Indeed, dismissal is appropriate even when the publication of private facts is accompanied by alleged misconduct on the part of the publisher. *See Howell,* 81 N.Y.2d at 125-26, 596 N.Y.S.2d at 355-56 (conduct of a photographer who allegedly trespassed on the secluded grounds of a private psychiatric facility and took a picture of plaintiff next to a well-known patient was not sufficiently "atrocious, indecent [or] utterly despicable" to warrant a claim.); *Nunez*, 957 F. Supp. at 442-43 (dismissing intentional infliction claim because defendants' "boorish, vulgar, and reprehensible" conduct of expressing vile and sexist statements to the plaintiff in public "does not rise to the level of outrageousness required by the caselaw").

Here, as in *Howell,* Plaintiff simply does not allege the kind of consistent, harassing and abusive conduct that gives rise to an intentional infliction of emotional distress claim. Therefore, she cannot make out the elements of her claim.

## CONCLUSION

For all of the foregoing reasons, defendants Monica Levinson, Twentieth Century Fox Film Corporation, One America Productions, Inc., Todd Schulman, Sacha Baron Cohen, Larry Charles, Jay Roach, Everyman Pictures, Springland Films, Dune Entertainment LLC, Comedy Partners (incorrectly sued herein as "MTV Networks d/b/a Comedy Central"), Dakota North Entertainment, Inc., and Four by Two Production Company respectfully request that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: May 5, 2008

Respectfully submitted,

HOGAN & HARTSON LLP

By: _____/s/_____
Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
*Attorneys for Defendants Monica Levinson, Twentieth Century Fox Film Corporation, One America Productions, Inc., Todd Schulman, Sacha Baron Cohen, Larry Charles, Jay Roach, Everyman Pictures, Springland Films, Dune Entertainment, LLC, Comedy Partners, Dakota North Entertainment, Inc., and Four by Two Production Company*

**<u>EXHIBIT A</u>**

**To Defendants' Memorandum of Law
in Support of Their Motion to Dismiss the First Amended Complaint**

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | |
|---|---|
| DATE: 02/15/07 | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN    JUDGE | K. SANDOVAL    DEPUTY CLERK<br>R. WHITE, CSL/CT. ASST. |
| HONORABLE    JUDGE PRO TEM<br>#5 | ELECTRONIC RECORDING MONITOR |
| NONE    Deputy Sheriff | NONE    Reporter |

| 2:30 pm | SC091723 | Plaintiff<br>Counsel | |
|---|---|---|---|
| | JOHN DOE I ET. AL.<br>VS<br>ONE AMERICA PRODUCTIONS,INC. ET<br> AL. | | NO APPEARANCES |
| | | Defendant<br>Counsel | |

NATURE OF PROCEEDINGS:

RULING ON SUBMITTED MATTER;

Court rules on Special Motion to Strike taken under
submission on February 14, 2007 as follows:

SPECIAL MOTION TO STRIKE

Evidentiary Objections

EVIDENTIARY OBJECTIONS BY DEFENDANTS

DECL OF STAUFFER

1.    Para 3 -  Sustained - hearsay
2.    Para 4 =  Sustained as to any reference to
      "producer" as hearsay
3.    Para 5 -  Sustained as to any reference to
      "producer" as hearsay

DECL OF HAMMETT

1.    Para 3 -  Overruled
2.    Para 4 -  Overruled
3.    Para 5 -  Overruled

DECL OF ROTUNDA

1.    Para 14- Sustained as to foundation
2.    Para 15- Sustained as to foundation

                    Page   1 of 10   DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07                                                          DEPT. WEC

HONORABLE JOSEPH S. BIDERMAN      JUDGE    K. SANDOVAL         DEPUTY CLERK
                                           R. WHITE, CSL/CT. ASST.
HONORABLE                    JUDGE PRO TEM            ELECTRONIC RECORDING MONITOR
#5
        NONE              Deputy Sheriff   NONE                        Reporter

2:30 pm  SC091723                     Plaintiff
                                      Counsel
         JOHN DOE I ET. AL.                        NO APPEARANCES
         VS                           Defendant
         ONE AMERICA PRODUCTIONS,INC. ET Counsel
           AL.

**NATURE OF PROCEEDINGS:**

    3.    Para 16-  Overruled
    4.    Para 17-  Sustained as to hearsay regarding the
                    substance of the telephone calls and as
                    to foundation regarding level of
                    consequences "inevitable"
    5.    Para 18   Overruled
    6.    Para 19   Sustained as speculation
    7.    Para 20   Overruled

    Merits

    As an initial matter, the Court notes that the
    only issue before it today is the narrow inquiry of
    whether this action constitutes what our Legislature
    has denominated as a "SLAPP" - a strategic lawsuit
    against public participation.  The propriety of
    filming individuals, often in crude contexts and
    with a disarming disguise, with the specific intent
    of later embarrassing them on a national scale -
    even those individuals who, on occasion, exhibit
    less than admirable qualities - is not before the
    Court.  Rather, the Court's role is constrained to
    an examination of the legal issues presented by the
    parties.  The Court cannot and does not reach the
    topic of whether the Defendants' conduct is
    appropriate or conscionable; the only question is
    whether a legal claim survives in the manner it has
    been drafted in Plaintiffs' Complaint.

    Under the two-step process of Section 425.16 of

                    Page   2 of 10   DEPT. WEC

                                            MINUTES ENTERED
                                            02/15/07
                                            COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | | DEPT. WEC |
|---|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL | DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. | |
| HONORABLE #5 | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE | Reporter |

| 2:30 pm | SC091723 | Plaintiff Counsel | |
|---|---|---|---|
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant | |
| | ONE AMERICA PRODUCTIONS,INC. ET | Counsel | |
| | AL. | | |

NATURE OF PROCEEDINGS:

the Code of Civil Procedure, the trial court first decides "whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity .... If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim." Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 67. "In bringing a section 425.16 motion to strike, the defendant has the initial burden to make a prima facie showing that the plaintiff's claims are subject to section 425.16. If the defendant makes that showing, the burden shifts to the plaintiff to establish a probability he or she will prevail on the claim at trial, i.e., to proffer a prima facie showing of facts supporting a judgment in the plaintiff's favor." Roberts v. Los Angeles County Bar Assoc. (2003) 105 Cal.App.4th 604, 613 (emphasis added). The Court must consider the pleadings and the evidence submitted by the parties; it cannot weigh the evidence but instead must simply determine whether the plaintiff's evidence would, if credited, be sufficient to meet the plaintiff's burden of proof. Ramona Unified Sch. Dist. v. Tsiknas (2005) 135 Cal.App. 4th 510, 519.

The parties dispute whether Plaintiffs' six causes of action are subject to Section 425.16. As the Court indicated at the lengthy hearing on this

Page    3 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| | | |
|---|---|---|
| DATE: 02/15/07 | | DEPT. WEC |
| HONORABLE JOSEPH S. BIDERMAN    JUDGE | K. SANDOVAL    DEPUTY CLERK | |
| HONORABLE    JUDGE PRO TEM | R. WHITE, CSL/CT. ASST. | |
| #5 | | ELECTRONIC RECORDING MONITOR |
| NONE    Deputy Sheriff | NONE    Reporter | |

| | | |
|---|---|---|
| 2:30 pm | SC091723 | Plaintiff Counsel    NO APPEARANCES |
| | JOHN DOE I ET. AL. | |
| | VS | Defendant Counsel |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | |

**NATURE OF PROCEEDINGS:**

motion, the Court concludes that Defendants have satisfied their initial burden under the anti-SLAPP statute.

Plaintiffs argue that this case is about misrepresentations, not conduct in furtherance of free speech rights. However, the last four causes of action stated in Plaintiffs' complaint indisputably arise from Defendants' communications (i.e., the movie). As to the first two causes of action (fraud and rescission), though couched in fraud, their gravamen, or principal thrust, goes to the exhibition of the movie. See, e.g., Complaint, paras. 16-18, 21, and 26; Martinez v. Metabolife Internat. Inc. (2003) 113 Cal.App.4th 181, 188 ("[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies..."). Indeed, at oral argument counsel effectively conceded, as he must, that this action would not exist at all if the movie were not playing in the United States.

Further, it is beyond reasonable dispute (and undisputed) that the topics addressed and skewered in the movie - racism, sexism, homophobia, xenophobia, anti- semitism, ethnocentrism, and other societal ills - are issues of public interest, and that the movie itself has sparked significant public awareness and debate about these topics. "The definition of 'public interest' within the meaning

Page    4 of 10    DEPT. WEC

| |
|---|
| MINUTES ENTERED |
| 02/15/07 |
| COUNTY CLERK |

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | | DEPT. WEC |
|---|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL | DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. | |
| HONORABLE | JUDGE PRO TEM | | ELECTRONIC RECORDING MONITOR |
| #5       NONE | Deputy Sheriff | NONE | Reporter |

| 2:30 pm | SC091723 | Plaintiff Counsel | |
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | | |
| | ONE AMERICA PRODUCTIONS, INC. ET | Defendant Counsel | |
| | AL. | | |

**NATURE OF PROCEEDINGS:**

of the anti-SLAPP statute has been "broadly
construed." Damon v. Ocean Hills Journalism Club
(2000) 85 Cal.App.4th 468, 479. Thus, a statement
or activity has been held to be in the public
interest when it involves a topic of widespread
interest. Rivero v. American Fed. of State, County
& Mun. Employees, AFL-CIO (2003) 105 Cal.App. 4th
913, 924. Likewise, "[m]ajor societal ills are
issues of public interest." Lieberman v. KCOP
Television, Inc. (2003) 110 Cal.App.4th 156, 164.

The movie is not about whether these specific
plaintiffs held racist, sexist, or anti- Semitic
views, but rather concerns the general topics of
racism, sexism, homophobia, anti-Semitism, and
ethnocentrism, which (as previously noted) are
issues of public interest. See, M.G. v. Time
Warner, Inc. (2001) 89 Cal.App.4th 623, 629 (courts
are to look at the broad topic of an article or
program in determining whether the act in
furtherance of free speech was related to a public
issue). In addition, several cases have held that
the anti-SLAPP statute applies to private
communications concerning public issues. E.g.,
Averill v. Superior Court (1996) 42 Cal.App.4th
1170, 1175; Ruiz v. Harbor View Community Assn.
(2005) 134 Cal.App.4th 1456, 1470; Integrated Health
Care Holdings v. Fitzgibbons (2006) 140 Cal.App.4th
515, 525, fn. 4.

Page    5 of 10    DEPT. WEC

| MINUTES ENTERED |
|---|
| 02/15/07 |
| COUNTY CLERK |

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

DEPT. WEC

HONORABLE  JOSEPH S. BIDERMAN      JUDGE

K. SANDOVAL        DEPUTY CLERK
R. WHITE, CSL/CT. ASST.

HONORABLE
#5
            NONE

JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

NONE

Deputy Sheriff

Reporter

| 2:30 pm | SC091723 | Plaintiff<br>Counsel | |
|---|---|---|---|
| | JOHN DOE I ET. AL.<br>VS<br>ONE AMERICA PRODUCTIONS,INC. ET<br>AL. | Defendant<br>Counsel | NO APPEARANCES |

NATURE OF PROCEEDINGS:

In addition to the foregoing, the Court
concludes that application of CCP 425.16 to the
unusual fact pattern before the Court would further
that statute's purpose of encouraging participation
in matters of public significance.

Insofar as Defendants have satisfied their
initial burden under CCP 425.16, the burden now
shifts to Plaintiffs to establish a probability that
they will prevail at trial by making a prima facie
showing as to each cause of action.  The Court
concludes that Plaintiffs have failed to satisfy
this burden as to any cause of action.

Plaintiffs' opposition brief fails to address
several of the arguments raised by Defendants with
regard to the fraud claim, such as the lack of
actual, definite damages.  Plaintiffs' evidence in
this regard is virtually non-existent.

Plaintiffs have failed to show a basis for the
equitable remedy of rescission. The Court could not
possibly return Plaintiffs to anything remotely
close to the status quo ante.  Indeed, the
rescission claim is, in effect, seeking a backdoor
permanent injunction against displaying Plaintiffs'
images, etc. on DVD, without satisfying the
stringent requirements for that type of injunction.

Plaintiffs' opposition brief does not in any

Page   6 of 10   DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| DATE: 02/15/07 | | DEPT. WEC |
|---|---|---|
| HONORABLE JOSEPH S. BIDERMAN | JUDGE | K. SANDOVAL    DEPUTY CLERK |
| | | R. WHITE, CSL/CT. ASST. |
| HONORABLE #5 | JUDGE PRO TEM | ELECTRONIC RECORDING MONITOR |
| NONE | Deputy Sheriff | NONE                    Reporter |

| 2:30 pm | SC091723 | Plaintiff Counsel | |
|---|---|---|---|
| | JOHN DOE I ET. AL. | | NO APPEARANCES |
| | VS | Defendant | |
| | ONE AMERICA PRODUCTIONS, INC. ET AL. | Counsel | |

**NATURE OF PROCEEDINGS:**

manner respond to Defendants' argument that they did not portray Plaintiffs in a false light.  Motion, 15:8-19.

With regard to Plaintiffs' mis-titled claim for "statutory false light" (which is actually a claim based on the statutory right of publicity) and Plaintiffs' claim for common law misappropriation of likeness, Defendants simply have the more persuasive arguments, particularly with regard to those based on the First Amendment.  Indeed, the Court cannot stress too highly the importance of the free speech rights at stake in this case.  Movies are of significant public interest.  "It cannot be doubted that motion pictures are a significant medium for the communication of ideas. They may affect public attitudes and behavior in a variety of ways, ranging from direct espousal of a political or social doctrine to the subtle shaping of thought which characterizes all artistic expression.  The importance of motion pictures as an organ of public opinion is not lessened by the fact that they are designed to entertain as well as to inform." Joseph Burstyn, Inc. v. Wilson (1952) 343 U.S. 495, 501, 72 S.Ct. 777, 96 L.Ed. 1098 (fn. omitted).  The fact that movies are made for private profit does not diminish the fact movies are "a form of expression whose liberty is safeguarded by the First Amendment."  Id. at 501-502, 72 S.Ct. 777 (fn. omitted).  See also, Guglielmi v. Spelling-Goldberg

Page   7 of 10   DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07

DEPT. WEC

HONORABLE JOSEPH S. BIDERMAN    JUDGE

K. SANDOVAL    DEPUTY CLERK
R. WHITE, CSL/CT. ASST.

HONORABLE
#5    JUDGE PRO TEM

ELECTRONIC RECORDING MONITOR

NONE    Deputy Sheriff

NONE    Reporter

| 2:30 pm | SC091723 | | |
|---|---|---|---|
| | JOHN DOE I ET. AL. | Plaintiff<br>Counsel | NO APPEARANCES |
| | VS | | |
| | ONE AMERICA PRODUCTIONS, INC. ET<br>AL. | Defendant<br>Counsel | |

NATURE OF PROCEEDINGS:

Productions (1979) 25 Cal.3d 860. This movie in
particular, which is part fiction and part
documentary, utilizes the reactions and statements
of people such as Plaintiffs to subversively
satirize the true targets of the movie:
ethnocentrism, sexism, racism, and the like.

Plaintiffs' claim for "negligent infliction of
emotional distress," which is really a claim for
negligence, fails. Plaintiffs have failed to
identify the duty which they contend Defendants owed
them, and the manner in which Defendants breached
said duty. Further, insofar as the movie is partly
a work of fiction, the cause of action is arguably
barred by Polydoros v. Twentieth Century Fox Film
Corp. (1997) 67 Cal.App.4th 318, 326 ("Respondents
are 'immune' from liability because they have a
constitutional right to free expression, which they
exercised when they made and released this film")

Motion is granted in full. Defendants are to
serve and lodge a proposed order pursuant to CRC
3.1312. They are to concurrently serve and lodge a
proposed revised judgment of dismissal as to the
complaint in its entirety.

Any request for attorney's fees pursuant to CCP
425.16(c) may be made by separate motion supported
by admissible evidence showing in detail the amount
of reasonable time spent on the motion to strike and

Page    8 of 10    DEPT. WEC

MINUTES ENTERED
02/15/07
COUNTY CLERK

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07                                                    DEPT. WEC

HONORABLE JOSEPH S. BIDERMAN          JUDGE | K. SANDOVAL          DEPUTY CLERK
                                              R. WHITE, CSL/CT. ASST.
HONORABLE                        JUDGE PRO TEM                    ELECTRONIC RECORDING MONITOR
#5
         NONE                    Deputy Sheriff | NONE                    Reporter

2:30 pm | SC091723                        Plaintiff
                                          Counsel
         JOHN DOE I ET. AL.                              NO APPEARANCES
         VS                               Defendant
         ONE AMERICA PRODUCTIONS, INC. ET  Counsel
          AL.

---

NATURE OF PROCEEDINGS:

the fees motion.

Clerk to give notice.  Counsel for plaintiff to
promptly notice remaining parties.

### CLERK'S CERTIFICATE OF MAILING/
### NOTICE OF ENTRY OF ORDER

I, the below named Executive Officer/Clerk of the
above-entitled court, do hereby certify that I am not
a party to the cause herein, and that this date I
served Notice of Entry of the above minute order of
2-15-07 upon each party or counsel named below by
depositing in the United States mail at the courthouse
in Los Angeles, California, one copy of the
original entered herein in a separate sealed envelope
for each, addressed as shown below with the postage
thereon fully prepaid.

Date: February 15, 2007

John A. Clarke, Executive Officer/Clerk


By: _____
              K. Sandoval


OLIVIER A. TAILLIEU, ESQ.      WALT SADLER, ESQ.
9595 WILSHIRE BOULEVARD        LEOPOLD, PETRICH & SMITH

                 Page   9 of 10    DEPT. WEC      ┌─────────────────────┐
                                                  │ MINUTES ENTERED     │
                                                  │ 02/15/07            │
                                                  │ COUNTY CLERK        │
                                                  └─────────────────────┘

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 02/15/07                                                          DEPT. WEC

HONORABLE  JOSEPH S. BIDERMAN          JUDGE    K. SANDOVAL          DEPUTY CLERK
                                                R. WHITE, CSL/CT. ASST.
HONORABLE                         JUDGE PRO TEM                       ELECTRONIC RECORDING MONITOR
#5
           NONE                     Deputy Sheriff   NONE                    Reporter

| 2:30 pm | SC091723 | | Plaintiff Counsel | |
|---|---|---|---|---|
| | JOHN DOE I ET. AL. | | | NO APPEARANCES |
| | VS | | Defendant Counsel | |
| | ONE AMERICA PRODUCTIONS,INC. ET AL. | | | |

NATURE OF PROCEEDINGS:

9TH FLOOR                         SUITE 3110
BEVERLY HILLS, CA   90212         2049 CENTURY PARK EAST
                                  LOS ANGELES, CA   90067

MINUTES ENTERED
02/15/07
COUNTY CLERK