Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
Hogan & Hartson LLP
875 Third Avenue
New York, NY  10022
Telephone: (212) 918-3000
*Attorneys for Defendants Monica Levinson,*
*Twentieth Century Fox Film Corporation,*
*One America Productions, Inc., Todd Schulman,*
*Sacha Baron Cohen, Larry Charles, Jay Roach*
*Everyman Pictures, Springland Films,*
*Dune Entertainment, LLC, Comedy Partners,*
*Dakota North Entertainment, Inc., and*
*Four by Two Production Company*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

| | |
|---|---|
| Kathie Martin, | : |
| | : |
| Plaintiff, | : |
| | : |
| – against – | : Case No. 08 CV 1828 (LAP) |
| | : |
| Dan Mazer, Anthony Hines, Larry Charles, Peter Baynham, Monica Levinson, Jay Roach, Todd Phillips, Everyman Pictures, Twentieth Century Fox Film Corporation, One America Productions, Inc., Gold/Miller Productions, Springland Films, Dune Entertainment, LLC, MTV Networks d/b/a Comedy Central, Dakota North Entertainment, Inc., Four by Two Production Company, Sacha Baron Cohen, Todd Schulman, and John Does Nos. 1-5, | : |
| | : |
| Defendants. | : |

-----------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THEIR MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES……………………………………………………………...ii

ARGUMENT ..................................................................................................................... 1

THE RELEASE BARS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY ................... 1

    A.    The Release Bars Plaintiff's Fraudulent Inducement Claim ............ 1

        1.    Plaintiff Waived Her Right To Rely On Any Representations About The Nature Of The Film Or The Identity Of Persons Involved In The Film ............................ 2

        2.    The Release Is Not Misleading ............................................. 4

    B.    This Court Should Dismiss Plaintiff's Unjust Enrichment Claim .................................................................................................... 8

CONCLUSION ................................................................................................................ 10

## TABLE OF AUTHORITIES

Page

**Federal Cases**

*Ex Parte Cohen,*
    Case No. 1061288, 2008 WL 162598 (Ala. Jan. 18, 2008) ...................................................... 7

*Fonseca v. Columbia Gas Sys., Inc.*,
    37 F. Supp. 2d 214 (W.D.N.Y. 1998) ...................................................................................... 3

*Johnston v. One America Prods., Inc.*,
    No. 2:07CV042-P-B, 2007 WL 2903218 (N.D. Miss. Oct. 2, 2007) ....................................... 6

*Lemerond v. Twentieth Century Fox Film Corp.*,
    No. 07 Civ. 4635 (LAP), 2008 WL 918579 (S.D.N.Y. Mar. 31, 2008) ............................. 6, 10

*Levin v. McPhee*,
    917 F. Supp. 230 (S.D.N.Y. 1996), *aff'd*,
    119 F.3d 189 (2d Cir. 1997) ..................................................................................................... 8

*Metro. Life Ins. Co. v. RJR Nabisco, Inc.*,
    906 F.2d 884 (2d Cir. 1990) ..................................................................................................... 8

*Natwest USA Credit Corp. v. Alco Standard Corp.*,
    858 F. Supp. 401 (S.D.N.Y. 1994) ........................................................................................... 9

*Scala v. Sequor Group, Inc.*,
    No. 94 Civ. 0449 (LAP), 1995 WL 225625 (S.D.N.Y. Apr. 14, 1995) ........................... 2, 3, 5

*Zoll v. Ruder Finn, Inc.*,
    No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH),
    2004 WL 42260 (S.D.N.Y. Jan. 7, 2004) ............................................................................... 10

**State Cases**

*Danann Realty Corp. v. Harris*,
    5 N.Y.2d 317, 184 N.Y.S.2d 599 (1959) ................................................................................. 2

*Doe v. One America Prods., Inc.*,
    SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) .............................................................. 6

*Rocanova v. Equitable Life Assur. Soc. of U.S.*,
    83 N.Y.2d 603, 612 N.Y.S.2d 339 (2008) ............................................................................... 3

*Saunder v. Baryshnikov*,
   110 A.D.2d 511, 487 N.Y.S.2d 51 (1st Dep't 1985) ................................................................9

*Smalley v. Dreyfus Corp.*,
   10 N.Y.3d 55, 853 N.Y.S.2d 270 (2008) ................................................................................3

*Touloumis v. Chalem*,
   156 A.D.2d 230, 548 N.Y.S.2d 493 (1st Dep't 1989) .............................................................3

**Federal Statutes/Rules**

Federal Rules of Civil Procedure Rule 12(b)(6) ...............................................................................1

**State Statutes**

New York Civil Rights Law § 51 ..............................................................................................9, 10

Defendants, by their undersigned attorneys, respectfully submit this reply memorandum of law in further support of their motion to dismiss the Complaint of Plaintiff Kathie Martin pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1]

## ARGUMENT
## THE RELEASE BARS PLAINTIFF'S COMPLAINT IN ITS ENTIRETY

In Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the First Amended Complaint (the "Opposition"), Plaintiff, an experienced businesswoman, Complaint ¶ 26, essentially argues that she is not bound by the Release she concededly signed because she was surprised the Film was not a true documentary and that it contained offensive material and was R rated. Opp. at 1-2, 15-17. Plaintiff's arguments are wholly meritless. All of Plaintiff's assumptions about the Film are contradicted by face of the Release, which explicitly states that the Film is a "documentary-style" motion picture which may contain offensive and sexually explicit content. As such, Plaintiff is bound by the Release, which bars her Complaint in its entirety.

**A.    The Release Bars Plaintiff's Fraudulent Inducement Claim**

There is no dispute that Plaintiff voluntarily signed the Release, which unambiguously stated that she waived all of the claims she asserts here. Release ¶ 4. It is also undisputed that she was paid $350 "to appear in a motion picture," as the Release recites. *Id.* at 1. Plaintiff now seeks to avoid the consequences of that Release by advancing two theories. First, Plaintiff alleges in the Complaint that she is not bound by the Release because she was fraudulently

---

[1] The facts necessary for the determination of this motion are set forth in the Hansen Decl., and the Metcalf Decl., and the exhibits annexed thereto, submitted with Defendants' Memorandum of Law in Support of Their Motion to Dismiss the First Amended Complaint (the "Opening Memorandum") and the reply declaration of Joan Hansen ("Reply Decl."), sworn to on the 19th day of June 2008, and the exhibit annexed thereto, submitted herewith. All defined terms in this memorandum of law have the meanings given to them in the Opening Memorandum.

induced to sign it. Second, Plaintiff posits a new theory that the Release itself is misleading because the Film is not truly a "documentary-*style*" motion picture as described in the Release. But, neither the old nor the new theory saves Plaintiff's claims. The Release is valid and bars Plaintiff's Complaint in its entirety.

1. Plaintiff Waived Her Right To Rely On Any Representations About The Nature Of The Film Or The Identity Of Persons Involved In The Film

As set forth more fully in the Opening Memorandum, Plaintiff's fraudulent inducement claim, along with each of the other claims set forth in her Complaint (all of which are covered by the Release), should be dismissed because the law is clear that when a plaintiff signs a release which disclaims reliance upon specific representations the plaintiff "is barred from pursuing his claim that he was defrauded in signing his contracts." *Scala v. Sequor Group, Inc.,* No. 94 Civ. 0449 (LAP), 1995 WL 225625, at *6 (S.D.N.Y. Apr. 14, 1995) (Preska, J.). *See also Danann Realty Corp. v. Harris*, 5 N.Y.2d 317, 320-21, 184 N.Y.S.2d 599, 599 (1959) (a disclaimer that states plaintiff is "not relying on any representations as to the very matter as to which it now claims it was defrauded … *destroys* the allegations in the complaint that the agreement was executed in reliance upon these contrary oral representations") (emphasis added).

Here, Plaintiff expressly agreed that, in entering into the Release, she was "not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film." Release ¶ 5.[2] Accordingly, regardless of what Plaintiff now claims she was told by the Defendants, she is plainly and simply barred from pursuing her fraudulent inducement claim based on any such representations.

Rather than even address this clear precedent – and it is telling that Plaintiff utterly fails

---

[2] Plaintiff also specifically released any fraud claim based on "any alleged deception or surprise about the Film." Release ¶ 4(n). As such, her claim, which is wholly based on her alleged surprise about the nature of the Film, is barred.

to do so – Plaintiff claims that her mere allegations of fraud are sufficient to defeat this motion to dismiss. Opp. at 1, 3-4. That position is simply wrong. The cases Plaintiff cites for this proposition, which contain only a passing discussion of fraud claims, do not address a release that specifically disclaims reliance on representations regarding the very matter now alleged to have been misrepresented. Indeed, in researching and preparing this memorandum, the undersigned have not been able to find even a single case which holds that mere allegations of fraud are sufficient to survive a motion to dismiss where there is a disclaimer clause like the one at issue here. Moreover, many courts, including this one, *do* dismiss fraudulent inducement claims on a motion to dismiss. *See, e.g., Scala*, 1995 WL 225625, at *6 (dismissing fraudulent inducement claim on a motion to dismiss); *Fonseca v. Columbia Gas Sys., Inc.,* 37 F. Supp. 2d 214, 229 (W.D.N.Y. 1998) (same). Indeed, just this year, the New York Court of Appeals dismissed a claim for fraudulent inducement on a motion to dismiss because the plaintiff could not – as Plaintiff here cannot – establish reasonable reliance as a matter of law. *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 853 N.Y.S.2d 270 (2008). *See also Rocanova v. Equitable Life Assur. Soc. of U.S*., 83 N.Y.2d 603, 612 N.Y.S.2d 339 (2008) (affirming dismissal of plaintiff's fraudulent inducement claim). If mere allegations of fraud could defeat a motion to dismiss, even in the face of a release with a specific disclaimer clause, it would completely contradict New York's long-held recognition that releases are presumptively valid. *See Touloumis v. Chalem*, 156 A.D.2d 230, 231, 548 N.Y.S.2d 493, 494 (1st Dep't 1989) (Releases are "a jural act of high significance without which the settlement of disputes would be rendered all but impossible") (internal citations omitted). As such, Plaintiff's mere allegations of fraud are insufficient to defeat this motion and Plaintiff cannot rely on Defendants' alleged misrepresentations to invalidate the Release.

2. <u>The Release Is Not Misleading</u>

Faced with the weakness of her claims as alleged in the Complaint (all of which are based on Defendants' alleged oral misrepresentations), Plaintiff comes up with a new theory in the Opposition that the Release is invalid because it falsely and fraudulently describes the Film and is, therefore, misleading on its face. Opp. at 6, 7-10. But, as stated above, in the Release Plaintiff agrees that she is "not relying upon any promises or statements made by anyone about the nature of the Film or the identity of any other Participants or persons involved in the Film." Release ¶ 5. As such, Plaintiff has waived the right to make this argument. Further, even if she had not done so, this new theory nevertheless lacks merit.

First, because Plaintiff goes out of her way to confuse the issue, it is important to emphasize the plain wording of the Release. The Release states that "in exchange" for $350, Plaintiff has "the opportunity … to appear in a *motion picture.*" Release at 1. In the Release, Plaintiff agrees to be filmed for a "documentary-style film" that is aimed at "a young adult audience by using entertaining content and formats." *Id.* ¶ 1. The Release also explains that Defendants had the right to use Plaintiff's image "without restriction in any media throughout the universe in perpetuity and without liability ….." *Id.* ¶¶ 1, 2. Plaintiff also agrees to waive her right to bring "*any claims*" against Defendants including claims for "infringement of rights of publicity or misappropriation (such as any alleged improper of unauthorized use of [Plaintiff's] name or likeness or image)", deceptive trade practices, intentional infliction of emotional distress or fraud. *Id.* at 1, ¶ 4(a), (f), (i) (n) (emphasis added). And, as discussed above, Plaintiff disclaims reliance on any representations (which would include oral representations) about the nature of the Film or the identity or persons associated with the Film. *Id.* ¶ 5. On its face, the Release accurately describes Plaintiff's participation in the Film and the scope of her waiver or

rights.[3]

Faced with this unequivocal language, Plaintiff focuses on three words in the Release – "documentary-style film" – to argue that the Release is misleading and therefore invalid. But this argument is a red herring. The definition of the Film as a documentary-style film is wholly irrelevant to the release language at issue here. In paragraph 4 of the Release, Plaintiff voluntarily waives her right to bring specific claims against Springland and its related entities. *See* Release ¶ 4. It is not limited to Plaintiff's appearance in the "Film" as defined in the Release. Accordingly, whether or not the definition of "Film" as a documentary-style film is accurate is irrelevant to the enforceability of the Release.

Further, even if the definition of the Film were relevant, the use of the term "documentary-style" in connection with the Film is accurate, as is the remainder of the description. The Release clearly explains that the Film is a "motion picture" in a "documentary-style" that will be aimed at a "young adult audience by *using entertaining content and formats*" and that may involve some "*offensive behavior* or questioning" and "*sexually-oriented materials or activities*." Release at 1, ¶¶ 1, 4 (emphasis added). This is undoubtedly an accurate

---

[3] For these reasons, Plaintiff's argument that Defendants had a "duty" to fully explain the "true intent of the filming" based on Defendants' "peculiar knowledge" about the nature of the Film also fails. Opp. at 4, 13, 15. As this Court has recognized, a "duty to speak cannot arise simply because two parties" entered into a release and the "superior knowledge" exception to this rule does not apply in cases where the allegedly withheld information is clear from the release. *Scala*, 1995 WL 225625, at *8 n.14. Here, as discussed above, the Release truthfully describes the Film and the nature of the claims released. Plaintiff claims, for example, that she was misled because the Film is offensive, but the Release expressly stated that the Film may contain offensive content. Release ¶ 4(d). Plaintiff also complains that she was misled because the Film is R rated, but the Release expressly states that the Film is intended for a "young adult audience." *Id.* ¶ 1. And Plaintiff complains that she was misled because the Film contains sexual content, but the Release expressly states that the Plaintiff will be shown "sexually-oriented materials or activities." *Id.* ¶ 4(o). As such, each and every alleged misrepresentation is directly contradicted by the face of the Release. Thus, Defendants did not owe Plaintiff a duty to explain the "true intent of the Film" because it was clear on its face.

description of the Film. Indeed, as discussed in the Opening Memorandum, two other courts have already determined that the Film is a "part documentary" or a "mixture of documentary and fiction." *See Doe v. One America Prods., Inc.*, SC091723 (Sup. Ct. Los Angeles Co. Feb 15, 2007) (the Film is a "part documentary" which "utilizes the reactions and statements of people … to subversively satirize the true targets of the movie: ethnocentrism, sexism, racism, and the like.") (A true and correct copy of this decision is annexed as Exhibit A to the Opening Memorandum); *Johnston v. One America Prods., Inc.*, No. 2:07CV042-P-B, 2007 WL 2903218, at *5 (N.D. Miss. Oct. 2, 2007) (the Film "is not simply an ordinary, expressive, fictional work with fictional actors. Nor is it a pure documentary. Rather, the film is a unique mixture of documentary and fiction which blurs the boundaries of both genres …."). *See also Lemerond v. Twentieth Century Fox Film Corp.*, No. 07 Civ. 4635 (LAP), 2008 WL 918579, at *1, *3 (S.D.N.Y. Mar. 31, 2008) (Preska, J.) (commenting on the non-fiction aspects of the Film and noting that the Film chronicles the reactions of real people).[4] In the Opposition, Plaintiff appears to argue that a British film guide's description of the Film as a "spoof" that contains "outrageous, embarrassing responses from innocent … Americans" proves that the Film is not in a documentary-style. Opp. at 9 n.2, 16 n.6. While Defendants do not believe that this is relevant to this Court's determination here, there is nothing in that guide's description of the Film that is inconsistent with it being in a documentary-style. (For example, a quick google search of "spoof," "documentary-style" and "movie" comes up with 11,900 hits – one of the very first one

---

[4]  Additionally, the Film has been described in the media as a documentary-style film both by film critics and industry professionals. *See* http://blog.digitalcontentproducer.com briefingroom/2006/12/20/borat-lensed-with-panasonic-aj-hdc27-varicams/ (last visited June 17, 2008) (noting that the Film "was shot in classic documentary style"); David Germain, *Cultural Learnings: "Borat" v. "Literary Classics,"* THE ASSOCIATED PRESS, Mar. 8, 2007 (describing the Film as an "uproarious assemblage of sketches, documentary-style encounters and moments of cultural ridicule").

being a description of the Film).

Plaintiff strains to argue that the Release is misleading because the Film is not a "documentary" as understood "in modern cinema" because a documentary is non-fiction film. Opp. at 1, 8, 10. But the Release *does not* state that the Film is a "documentary." Opp. at 10. It states that it is a "documentary-style" motion picture. Release at 1, ¶ 1. And, as discussed above, that description is accurate.[5] Plaintiff also alleges that the Release is misleading because Schulman told Plaintiff his name was "Todd Lewis" and the Release was entered into by Springland – not One America. Opp. at 10, 14.[6] But this argument misses the mark. First, they are not misrepresentations. Schulman's full name is *Todd Lewis* Schulman and Schulman properly identified himself as a representative of Springland. And, Springland is a registered d/b/a of One America – the producer of the Film. Reply Decl, Ex. A. Moreover, the fact that Shulman's last name was Schulman, not Lewis, or that the corporate name of the production company for the Film was One America, not Springland, cannot possibly be considered material as it could not possibly have affected Plaintiff's decision to appear in a motion picture.

Finally, in a desperate effort to save her claim, Plaintiff argues that if the Release is not misleading, it is, at least, ambiguous. But, this argument is wrong as a matter of law. Plaintiff's own narrow interpretation of the term "documentary-style film" to cover only pure

---

[5] In the Opposition, Plaintiff lists a number of documentaries that are aimed at young adults. Opp. at 8. In the same vein, Defendants draw this Court's attention to a few examples of famous documentary-style films that are fictional, such as *This is Spinal Tap* (1984), *Best in Show* (2000), *The Blair Witch Project* (1999), *Bob Roberts* (1992), *Zelig* (1983) and the documentary-style fictional television show *The Office* (NBC).

[6] In the Opposition, Plaintiff alleges that Springland is a "shell company" that does not exist and that it was not a producer of the Film. Opp. at 5, 15. This allegation is false. Springland is a registered d/b/a of One America – the producer of the Film. Reply Decl., Ex. A. It is also surprising, since Plaintiff zealously argued in Alabama that the reason the Release was invalid was that *Springland* was not qualified to do business in Alabama. *Ex Parte Cohen,* Case No. 1061288, 2008 WL 162598, *3 (Ala. Jan. 18, 2008).

documentaries cannot make the Release ambiguous. As the Second Circuit has held, "Language whose meaning is otherwise plain is not ambiguous merely because the parties urge different interpretations in the litigation. The court should not find the language ambiguous on the basis of the interpretation urged by one party, where that interpretation would strain the contract language beyond its reasonable and ordinary meaning." *Metro. Life Ins. Co. v. RJR Nabisco, Inc.*, 906 F.2d 884, 889 (2d Cir. 1990) (internal citations and quotations omitted). Here, quite simply, the Release does not state the Film is a "documentary", and Plaintiff's attempt to argue that it should be read as such is unreasonable. Accordingly, this Court should not allow Plaintiff to strain the words "documentary-style" in one clause of the contract beyond their reasonable meaning in a futile attempt to create ambiguity.

In sum, Plaintiff is bound by the plain language of the Release she signed and in which she disclaimed reliance on Defendants' representations. Plaintiff's fraudulent inducement claim, therefore, must be dismissed.

**B.    This Court Should Dismiss Plaintiff's Unjust Enrichment Claim**

Next, Plaintiff's unjust enrichment claim fails as a matter of law.[7] First, Plaintiff cannot and does not dispute that her unjust enrichment claim is barred by the Release if the Release is valid. Because the Release is valid, the Court need go no further and can dismiss the claim based

---

[7]    Plaintiff's intentional infliction of emotional distress claim should also be dismissed. Not only is it expressly waived in the Release, but also Plaintiff essentially concedes that Defendants' conduct was not the "day in day out harassment" necessary for this claim. Instead, she argues that she feels consistently humiliated because the Film is "regularly on TV." Opp. at 20. The fact that the Film can be seen on television is not the kind of consistent, harassing and abusive conduct that gives rise to an intentional infliction of emotional distress claim. Indeed, if this conduct could support an intentional infliction claim, then a cause of action would arise any time an allegedly offensive article or book was published. Such an unreasonable interpretation of the intentional infliction of emotional distress tort is contrary to New York law. *Levin v. McPhee*, 917 F. Supp. 230, 242-43 (S.D.N.Y. 1996), *aff'd,* 119 F.3d 189 (2d Cir. 1997) (publication of an allegedly false or defamatory article about a plaintiff does not constitute extreme and outrageous conduct as a matter of law). As such, Plaintiff's claim must be dismissed.

on the Release.  But Plaintiff's unjust enrichment claim would also be dismissible as a matter of law even if Plaintiff had not signed the Release.

To save her claim, Plaintiff appears to argue that although she was paid $350 to appear in the Film, she now believes that was not enough.  The Film, she argues, was profitable and she is embarrassed by her participation in it, so Defendants should pay her some of its profits.  Opp. at 16-17.  But this assertion is nothing more than a transparent attempt to renegotiate her contract.  And Plaintiff's request for more money cannot provide a basis for an unjust enrichment claim.  *See Natwest USA Credit Corp. v. Alco Standard Corp.*, 858 F. Supp. 401, 413 (S.D.N.Y. 1994) (Preska, J.) ("A court should not rewrite a contract or create new terms or change the terms made by the parties"); *Saunder v. Baryshnikov*, 110 A.D.2d 511, 511, 487 N.Y.S.2d 51, 52 (1st Dep't 1985) (plaintiff's unjust enrichment claim fails because she was paid for her services).  Plaintiff contracted to appear in a motion picture in exchange for $350 and she was paid the full agreed-upon amount.  Release at 1.  This alone necessitates dismissal of her claim.  Similarly it is of no moment that other people in the Film "were given an opportunity to review the script and knowingly participate in the Borat Movie [which is R-rated]."  Opp. at 17.  What other people were paid or not paid, or knew or did not know about the Film is irrelevant to the fact that Plaintiff knowingly signed the Release and was paid $350.  If Plaintiff wanted more money or a chance to review the script beforehand, she should have asked to do so before she signed the Release.  She should not now be permitted to renegotiate her contract in the guise of an unjust enrichment claim.

Moreover, as stated in the Opening Memorandum, even if Plaintiff's theories had any merit, which they clearly do not, her unjust enrichment claim is preempted by Section 51.  Plaintiff argues that her claim is not preempted because her likeness and image were "hijacked"

by Defendants. Opp. at 18. But this is precisely why her claim *is* preempted. As explained in the Opening memorandum, "there is no cause of action in New York for unjust enrichment arising from the alleged unauthorized use of personal image." *Zoll v. Ruder Finn, Inc.,* No. 02 Civ. 3652 (CSH), 01 Civ. 1339 (CSH), 2004 WL 42260, at *4 (S.D.N.Y. Jan. 7, 2004). As such, Plaintiff's unjust enrichment claim for the "hijacking" of her personal image is preempted by Section 51.[8]

## CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that this Court dismiss the Complaint in its entirety, with prejudice, and grant such other and further relief, together with costs, as this Court deems appropriate.

Dated: June 20, 2008

Respectfully submitted,

HOGAN & HARTSON LLP

By:  /s/  Slade R. Metcalf
Slade R. Metcalf (SM 8360)
Katherine M. Bolger (KB 6206)
Rachel F. Strom (RS 9666)
HOGAN & HARTSON LLP
875 Third Avenue
New York, NY 10022
Tel: (212) 918-3000
*Attorneys for Defendants*

---

[8] Finally, as noted in the Opening Memorandum, Plaintiff could not have asserted a Section 51 claim here because Defendants' use of her image in the Film bore a real relationship to the newsworthy aspects of the Film. *See Lemerond*, 2008 WL 918579. Plaintiff attempts to distinguish this case from this Court's recent decision in *Lemerond* by stating that *Lemerond,* unlike this case, did not involve a release. Opp. at 18 n. 7. But the fact that there was no release in *Lemerond* is what makes Lemerond relevant to Plaintiff's arguments. *Lemerond* stands for the proposition that *even if* there were no valid Release here, Plaintiff's Section 51 claim would still fail  Accordingly, even if this Court recast Plaintiff's unjust enrichment claim as a Section 51 claim, it should still be dismissed.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
Kathie Martin,                                              :
                                                            :
                                Plaintiff,                  :
                                                            :
        – against –                                         :  Case No. 08 CV 1828 (LAP)
                                                            :
Dan Mazer, Anthony Hines, Larry Charles,                    :
Peter Baynham, Monica Levinson, Jay                         :
Roach, Todd Phillips, Everyman Pictures,                    :
Twentieth Century Fox Film Corporation,                     :
One America Productions, Inc., Gold/Miller                  :
Productions, Springland Films, Dune                         :
Entertainment, LLC, MTV Networks d/b/a                      :
Comedy Central, Dakota North                                :
Entertainment, Inc., Four by Two                            :
Production Company, Sacha Baron Cohen,                      :
Todd Schulman, and John Does Nos. 1-5,                      :
                                                            :
                                Defendants.                 :
-----------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

      I, Rachel F. Strom, hereby certify that on June 20, 2008, I caused a true and correct copy of Defendants' Reply Memorandum Of Law In Further Support Of Their Motion To Dismiss The First Amended Complaint and the Reply Declaration Of Joan Hansen In Further Support Of Defendants' Motion To Dismiss The First Amended Complaint and the exhibit annexed thereto to be served through the Court's electronic notification system and by electronic mail upon:

    Adam Richards
    ADAM RICHARDS LLC
    40 Fulton Street, 7th Floor
    New York, NY 10038
    Tel: (212) 233-4400
    adam@arichardslaw.com
    *Attorney for Plaintiff Kathie Martin*

Dated: June 20, 2008                                                  s/ Rachel F. Strom
                                                                                RACHEL F. STROM (RS 9666)